IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

FELICIA GOSSETT,

                    Plaintiff,                                **8:23CV189**

          vs.

JASON'S DELI,                                          **MEMORANDUM AND ORDER**

                    Defendant.

Before the Court is Defendant's Motion for Summary Judgment.  Filing No. 44. Plaintiff, Felicia Gossett ("Gossett") was terminated from her position as a manager by Defendant, Jason's Deli ("Jason's Deli").  At the time of her termination, Gossett was pregnant.  Gossett sued under Title VII and the Nebraska Fair Employment Practice Act ("NFEPA") alleging: (1) Jason's Deli's took adverse action against her because of her pregnancy, (2) Jason's Deli failed to accommodate her pregnancy, and (3) Jason's Deli retaliated against her for discussing employee wages.  Filing No. 1.

The Court concludes Gossett's claims fail as a matter of law.  Therefore, Jason's Deli's motion for summary judgment is granted.

## BACKGROUND

Jason's Deli is a national chain of sandwich shops and operates several stores in Omaha, Nebraska.  Gossett worked at the L Street location of Jason's Deli as a Level 7 Manager from September 2021 until her termination on July 1, 2022.  Filing No. 46-1 at 5, Gossett Dep. 25:3–5.  In that role, Gossett supervised deli employees, managed workflow, ordered supplies, and supported deli employees at the counter.  *Id.* at 6, Gossett Dep. 33:5–36:15.  During her time with Jason's Deli, Gossett's managers were Spencer

1

Bath and Michael Wallin.  *Id.* at 4, Gossett Dep. 23:20–25; *Id.* at 6, Gossett Dep. 35:6–9. Prior to her pregnancy, Jason's Deli never disciplined Gossett for violating employee policies or noted issues with her performance.  *Id.* at 18, Gossett Dep. 100:9–22.

### A.  Gossett's Pregnancy and Accommodations

On March 6, 2022, Gossett informed Bath that she was pregnant.  Gossett testified that Bath told her congratulations.  Filing No. 46-1 at 11, Gossett Dep. 54:20–44:5. Gossett also informed Jason's Deli's human resources department about her pregnancy. *Id.*, Gossett Dep. 55:17–21.

In connection with her pregnancy, Gossett requested several accommodations from Bath.  Specifically, she requested: (1) the ability to use a chair when her feet were swollen, (2) five to ten-minute breaks every two hours, (3) an exemption from tasks involving heavy lifting, and (4) not having to work longer than ten hours at a time.  Filing No. 46-1 at 11, Gossett Dep. 56:7–18.  The first request was made formally to human resources, and the others were requested informally from Bath.  *Id.* at 11–12, Gossett Dep. 56:19–59:24. Gossett recalled receiving verbal approval from Bath for all accommodations except for the ten-hour limit on shifts.  *Id.*  Gossett did not recall whether Bath approved a ten-hour limit on shifts.  *Id.* at 12, Gossett Dep. 58:14–24.  Later, Gossett submitted a doctor's note to Wallin and human resources, recommending she be provided with the opportunity to sit, lifting restriction, and breaks.  Filing No. 46-4.  Wallin testified he had no issue with Gossett's accommodations.  Filing No. 46-3 at 7, Wallin Dep. 39:21–40:8.

This issue came to a head during a shift in spring 2020.  The exact date of the incident is unclear from the existing record, but correspondence after the fact indicates

that it occurred the week of May 2, 2022.  *See* Filing No. 55-5 at 20.  Gossett was the

manger on duty and because the follow up manager called out sick, Bath told Gossett to

cover the rest of the shift.  *Id.*  Gossett told Bath she was "sick, and in pain.  I cannot do

a 12 ½ hour shift."  *Id.* at 9.  Bath responded that "there are no other options" and gave

her the next day off.  *Id.*  Gossett took the following day off.  Filing No. 46-1 at 17, Gossett

Dep. 81:9–13.

### B.  Wallin Takes Over as Gossett's Supervisor

In mid-May 2022 Wallin replaced Bath as Gossett's direct supervisor.  Filing No.

55-5 at 5 (indicating Wallin would be starting "next week" on May 6, 2022).  After taking

over the L Street store, Wallin took over several tasks that had previously been handled

by Gossett and her co-manager.  Specifically, based on concerns regarding overstaffing

and over purchasing, Wallin took over setting schedules for employees and ordering

supplies.  Filing No. 47-2 at 1 ¶¶ 8–9.

### C.  Gossett is Disciplined and Terminated

Between May 2022 and her termination, Gossett had several issues that required

meeting with Wallin, some of which resulted in disciplinary action.

In early May 2022, Gossett disclosed employee wage information to Chris Daniel,

a delivery driver for Jason's Deli.  Filing No. 46-1 at 20, Gossett Dep. 111:12–112:15.  As

a manager, Gossett had access to the wage information of each of her subordinates.  *Id.*

at 18, Gossett Dep. 97:11–13.  Lower-level employees, including Daniel, do not have

access to information about the wages of their coworkers.  *Id.* at 20, Gossett Dep. 110:24–

111:1.  Daniel raised concerns about his pay with Gossett, who confirmed the rate of pay

for several of Daniel's coworkers and indicated which coworkers were due for a raise.  *Id.*,

Gossett Dep. 112:11–15.  One of these employees learned that Gossett had disclosed wage information to Daniel and complained to human resources because "it really bothers me that she shares this information, and it scares me what else she might share."  Filing No. 47-4 at 1.  Wallin met with Gossett who denied sharing wage information.  Filing No. 47-5 at 1.  In response, Wallin said, "[A]s a member of management, it is expected that you do not share any pay, behavioral or personal employee information with other employees."  *Id.*

In June 2022, Gossett was disciplined for attendance related issues.  Specifically, Wallin issued a Disciplinary Action Report ("DAR") because Gossett took "multiple unscheduled days off in the last couple of weeks; 5/28, 6/11, 6/14, and 6/15."  Filing No. 47-6.  Gossett requested the May 28th absence by text on May 27, 2022.  Filing No. 55-7 at 1.  Specifically, she wrote, "[m]y body is in a lot of pain.  I pushed myself too hard this week.  I'm popping Tylenol as much as I'm allowed to and it's barely taking the edge off.  I'm not going to be able to work tomorrow like this."  *Id.*  At her deposition, Gossett testified the pain referenced in the May 27th text was caused by pregnancy-related illness.  Filing No. 46-1 at 23, Gossett Dep. 122:20–22.  Gossett missed work on June 10th,[1] 14th, and 15th because of car trouble.  *Id.* at 2–6.

The incident that ultimately led to Gossett's termination occurred on June 23, 2022.  Filing No. 47-10; Filing No. 47-8.  On that day, Gossett was the manager in charge during the morning shift, which included the lunch rush.  Filing No. 47-8.  Gossett spent

---

[1] Gossett testified at her deposition that the June 10th absence was also pregnancy-related but that may have been an oversight because Gossett was not shown her texts during that portion of the deposition which indicate the June 10th absence was car-related.  *Compare* Filing No. 46-1 at 23, Gossett Dep. 122:20–22 ("I believe two of those days were call-outs because of pregnancy-related illness.") *with* Filing No. 55-7 at 6 ("So my car got towed today, parked in the wrong spot . . . so I am willing to open but do not know how to get to work.").

4

much of the lunch rush in the office rather than working the counter. Filing No. 46-3 at 8, Wallin Dep. 47:21–25. The parties differ in their explanation of what happened during this time. Jason's Deli claims Gossett worked on personal matters. Filing No. 47-8. Gossett claims she spent the time documenting an injury that had occurred on the job and reviewing policies associated with pregnancy leave. Filing No. 46-1 at 24–25, Gossett Dep. 128:7–129:14. Gossett's internet history, retrieved during Wallin's investigation into the matter and produced in litigation, shows that Gossett spent time paying personal bills in the morning. Filing No. 55-8 at 2. During the lunch rush, it shows her reviewing Jason's Deli's policies for taking pregnancy leave, the schedule for the deli, and Gossett's MyChart account, an online portal used by patients to access their medical records. *Id.* at 3–8.

After the shift, multiple employees complained to Wallin that Gossett had spent the lunch rush working on personal matters. Filing No. 46-3 at 8, Wallin Dep. 48:12–20. Wallin pulled Gossett's internet history from the day in question and saw she had been on the computer throughout the morning and early afternoon of June 23rd. *Id.* at 9, Wallin Dep. 52:3–9. Wallin issued a DAR on June 29th because "it was reported that during lunch rush and a good part of your shift you spent a lot of time in the office working on personal tasks instead of focusing on the store." Filing No. 47-8. In response, Gossett sent via text message "I would just like to clarify that is being put on the record that I was written up for taking my 15-minute break covered by my accommodations. I timed the break. And it was over 2 hours from my previous 10-minute break. I timed all of it yesterday." Filing No. 47-9 at 1. There appears to be (and Gossett argues there is) a miscommunication in the text messages. Specifically, Gossett makes several comments

about things she did the previous day (June 29th) when the DAR was issued, even though the DAR was issued based on actions taken on June 23rd. *Compare* Filing No. 47-9 (text messages referencing "yesterday") *with* Filing No. 47-8 (DAR issued on June 29th referencing events on 6/23/2022). Based on the texts and Gossett's internet history, Wallin believed Gossett had lied about her activities on June 23rd. Filing No. 55-1 at 18, Wallin Dep. 63:5–11. Gossett was terminated on July 1, 2022, for "[n]umerous issues as previously documented; ultimately, lying during the scope of an investigation." Filing No. 47-10. Gossett was terminated in person and when she asked Wallin why she was being fired he said that she "lied" but did not provide any other reasoning. Filing No. 46-6 at 5.

After exhausting her administrative remedies, Gossett filed this lawsuit on May 5, 2023. Filing No. 1. Jason's Deli moved for summary judgment and Gossett opposed. Filing No. 44; Filing No. 53.

## LEGAL STANDARD

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "an adverse party cannot produce admissible evidence to support" a fact essential to the nonmoving party's claim. Fed. R. Civ. P. 56(c)(1)(A) & (B). The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The movant 'bears the initial responsibility of informing the district court of the basis for its motion and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp.*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Anderson*, 477 U.S. at 251.

Nebraska substantive law governs Gossett's state law claims. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). In analyzing Gossett's state law claims the Court is "bound in [its] interpretations of Nebraska law by the decisions of the Nebraska Supreme Court."

7

*Packard v. Darveau*, 759 F.3d 897, 901 (8th Cir. 2014) (quoting *Lindsay Mfg. Co. v. Hartford Acc. & Indem. Co.*, 118 F.3d 1263, 1267 (8th Cir. 1997). If the Nebraska Supreme Court has not considered an issue, the Court must "predict what the court would decide if it were to address the issue" based on "relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data." *Id.* (internal quotations omitted).

## DISCUSSION

### A. Title VII and NFEPA - Pregnancy Discrimination- Disparate Treatment

Gossett contends that she was terminated because of her pregnancy. Because Gossett cannot show that Jason's Deli's proffered reasons for firing her were a mere pretext for discrimination, Jason's Deli is entitled to summary judgment on her disparate treatment claim.

### 1. Legal Framework

Under 42 U.S.C. § 2000e-2 it is unlawful "to . . . discharge any individual . . . because of . . . sex . . .." Discrimination "on the basis of pregnancy" is sex discrimination. 42 U.S.C. § 2000e(k). A termination is based on pregnancy if the pregnancy if the termination "would not have happened 'but for' the" employee's pregnancy. *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656 (2020). Gossett can take two approaches to demonstrate that her pregnancy caused her termination. First, she can show direct evidence, meaning evidence that shows, "without inference, a discriminatory bias." *McCullough v. Univ. of Arkansas for Med. Scis.*, 559 F.3d 855, 861 (8th Cir. 2009). In other words, direct evidence "show[s] specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Id.*

at 860.  Second, she can show discriminatory intent through indirect evidence using the burden shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Specifically, Gossett can make her prima facie case by showing: "(1) [s]he is a member of a protected group, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) she was discharged under circumstances giving rise to an inference of discrimination." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011).  If Gossett establishes her prima facie case, the burden shifts to Jason's Deli to articulate their legitimate non-discriminatory reason for the termination.  *Id.*  "If [Jason's Deli] meets this burden, [Gossett] must then produce evidence sufficient to create a genuine issue of material fact showing that [Jason's Deli's] explanation is merely a pretext for unlawful discrimination."  *Id.*

### 2.  Direct versus indirect evidence of discrimination.

Gossett has not produced direct evidence of pregnancy discrimination.  Her pregnancy was not listed as a reason for her termination and there are no statements, contemporaneous or in litigation, indicating that her pregnancy played a role in the termination.  In response, Gossett contends that her DAR for missing work with pregnancy-related pain issued two weeks before her termination constitutes direct evidence of discriminatory animus.  To constitute direct evidence of discrimination, the evidence must show "without inference" a decisionmaker's discriminatory attitude. *McCullough*, 559 F.3d at 861.  For example, in *Duckworth v. St. Louis Metro. Police Dep't*, direct evidence of sex discrimination included an email referencing sex as a reason for police night patrol assignments, a policy of only assigning women to night patrols, and an admission in litigation that the patrol assignments were based on sex. *Duckworth v. St.*

*Louis Metro. Police Dep't*, 491 F.3d 401, 406 (8th Cir. 2007); *see also Marshall v. Eyecare Specialties, P.C. of Lincoln*, 876 N.W.2d 372 (Neb. 2016) (finding direct evidence when the corrective action plan forming the basis for plaintiff's termination explicitly referenced symptoms of plaintiff's disability). Here, in contrast, Gossett's link is more attenuated. The June 17th DAR does not reference pregnancy. *See* Filing No. 47-6. The date Gossett missed work for pregnancy-related pain occurred three weeks before the issuance of the DAR and five weeks before her termination. *Id.*; Filing No. 47-10. The date Gossett missed work with pregnancy related pain was one of several attendance-related issues that formed the basis for the June 17th disciplinary report. *See* Filing No. 47-6 (listing three additional days). Moreover, it is not apparent from the May 27th text that Gossett was seeking time off in connection with her pregnancy. Filing No. 55-7. To determine that this action indicates that discriminatory animus caused Gossett's termination, the jury would need to infer that: (1) Wallin understood the May 27th text as pregnancy related, (2) the discipline action three weeks later was based on that understanding suggesting bias, and (3) the disciplinary decision and Gossett's termination were motivated by that same underlying bias. Therefore, while the July 17th text may be indirect evidence of discrimination it is not the clear expression of discriminatory motive necessary to show direct evidence. Therefore, the Court proceeds under the burden-shifting indirect evidence framework.

### 3. Prima Facie Case

Gossett meets her prima facie case. She was pregnant at the time of her termination. 42 U.S.C. § 2000e(k). Jason's Deli does not contest it is an employer covered by Title VII. *See id.* at § 2000e(b) (covering employers with more than fifteen

employees).   Gossett's summary judgment briefing only focuses on her ultimate termination, which is indisputably an adverse action for the purposes of a disparate treatment claim under Title VII.   *See* Filing No. 53 at 3; 42 U.S.C. § 2000e-2 (listing "discharge" motivated by a protected trait as a basis for liability).[2]  Jason's Deli takes issue with two elements of Gossett's prima facie case.

First, Jason's Deli argues that Gossett was not qualified for her position because of her attendance issues, disclosure of wage information, and lies during an investigation of workplace misconduct.   Filing No. 48 at 9–10.   This analysis appears to argue Jason's Deli's legitimate non-discriminatory reason for Gossett's termination at the prima facie stage.   In all fairness to Jason's Deli, the Eighth Circuit case law on the issue has been inconsistent, with some cases holding a court may consider the employer's stated reason at the prima facie stage and others looking to the employee's qualifications outside of the issues that led to the employee's termination.   *See Elam v. Regions Fin. Corp.*, 601 F.3d 873, 879 n.4 (8th Cir. 2010) (citing cases on either side of the split); *Gardner v. Wal-Mart Stores, Inc.*, 2 F.4th 745 (8th Cir. 2021) (noting the issue has not been resolved).   The Court believes the second approach is correct.   Specifically, the burden at the prima facie stage is "not onerous" and a plaintiff is not "not required to disprove [defendant's] reason for firing him at" the prima facie "stage of the analysis."  *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010).   Moreover, considering the employers proffered reasons at the prima facie stage would allow a Court to accept the employer's explanation for the

---

[2] In discovery, Gossett listed several other purported adverse actions including allegations that Jason's Deli gave her fewer training opportunities, failed to pay her bonus, and took away several managerial tasks from her and her co-manager, but on summary judgment, she focuses exclusively on her termination and does not develop an argument related to those actions in her briefing.  *Compare* Filing No. 46-6 at 3–4 (Gossett's interrogatories) *with* Filing No. 53 at 3–11 (Gossett's brief). Therefore, the Court does not address whether these other actions qualify as adverse actions under the "some harm" standard adopted by the Supreme Court in *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 350 (2024).

termination, without performing the pretext inquiry, thereby collapsing the three steps of the burden shifting framework into one and render the legitimate nondiscriminatory reason and pretext steps a nullity. *Garang v. Smithfield Farmland Corp.*, 439 F. Supp. 3d 1073, 1087 (N.D. Iowa 2020); *Lake*, 596 F.3d at 874. Such a result is inconsistent with the flexible, fact specific approach envisioned by *McDonnell Douglas* because the approach was "never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1054 (8th Cir. 2011) (en banc) (Smith, J., concurring in part and dissenting in part) (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). Addressing Jason's Deli's arguments at this stage would be "to lose sight of the [proverbial] forest for the trees." *Id.* Therefore, to meet her prima facie burden, Gossett need only show she "was otherwise meeting expectations and otherwise qualified." *Lake*, 596 F.3d at 874; *Garang*, 439 F. Supp. 3d at 1087; Lex K. Larson, 1 Larson on Employment Discrimination § 8.08[4][f] (surveying the national case law and arguing this is the better approach). Here, Jason's Deli does not argue Gossett lacked the necessary qualifications to work as a manager or that, outside of the incidents that led to her termination, she was performing below expectations. Filing No. 48 at 9–10. Therefore, the Court concludes Gossett has met her prima facie burden of showing she was qualified for the role and addresses Jason's Deli's other arguments at the pretext stage.

Second, citing Gossett's purported lack of comparator evidence, Jason's Deli argues she has not shown circumstances giving rise to an inference of discrimination. Filing No. 48 at 13–15. Given that a plaintiff's burden at the prima facie stage is to make

a "minimal showing," Jason's Deli's arguments are better addressed at the pretext stage. *Kosmicki v. Burlington N. & Santa Fe R. Co.*, 545 F.3d 649, 651 (8th Cir. 2008).

### 4. Legitimate Nondiscriminatory Reason

Jason's Deli's legitimate non-discriminatory reason for Gossett discharge is Wallin's belief that Gossett lied to him during his investigation of employee complaints that Gossett spent too much time on personal matters during the store's lunch rush. Filing No. 48 at 16. Certainly, firing Gossett for a violation of company policy is a legitimate nondiscriminatory reason, so the Court turns to pretext. *See Wierman*, 638 F.3d at 995.

### 5. Pretext

Gossett argues Jason's Deli's supposed reason for terminating her was a pretext for pregnancy discrimination. Looking at the record as whole, the Court considers whether there is evidence in the record that would allow a reasonable jury to conclude "whether [Jason's Deli's] claim was motivated solely by" Wallin's belief that Gossett lied during his investigation, "and whether [Gossett's] pregnancy was a motivating factor in the employment decision." *Roberts v. Park Nicollet Health Servs.*, 528 F.3d 1123, 1127–28 (8th Cir. 2008). The Court concludes there is no dispute that Gossett's pregnancy was not a motivating factor in her termination.

Gossett's primary argument is Jason's Deli's supposed reason for firing her for working on personal matters at work was inaccurate. Evidence that an employers stated reasons for a termination do not pass muster can support a finding of pretext. *Id.* For example, in *Roberts*, defendant fired plaintiff for purported tardiness issues. *Id.* at 1128. However, the evidence showed that some of the instances relied upon by the defendant had been excused. *Id.* Here, however, the evidence supports Jason's Deli's reasons for

13

terminating Gossett.  The parties tell different stories about what happened in the back office during the shift that formed the basis for Gossett's termination.  Under Gossett's telling, she was performing tasks related to her role as manager and under Jason's Deli's telling she was working on personal tasks when she should have been supporting her subordinates at the sandwich counter.  *Compare* Filing No. 47-8 (Jason's Deli) *with* Filing No. 46-6 at 5 (Gossett). Gossett's internet history shows her completing personal tasks and visiting sites that were not related to her managerial work.  Filing No. 47-7 at 2–9. The core issue identified by Wallin, that Gossett was not supporting her subordinates during the busiest time of the day in the deli, is the same whether Gossett's activities were purely personal or related to managerial duties that ought to have been performed during a less busy time of the day.  Moreover, even if a jury agreed that the investigation was too rushed or missed important details, that would not be enough to demonstrate pretext. *Wierman*, 638 F.3d at 997–98.  Overall, there is little to demonstrate that Jason's Deli's stated reason for termination was incorrect, let alone that Gossett's pregnancy was the real reason.

Gossett attempts to tie her termination back to her pregnancy, relying on several categories of evidence.  Taken as a whole, this evidence is insufficient to create a triable issue of pretext.

First, Gossett argues that she was dismissed two weeks after for taking time off for pregnancy related pain.  Even if a jury could find this to be the case, this temporal proximity is insufficient to show pretext because there was an intervening event (the June 23rd incident and investigation) that "erode[s] any causal connection suggested by the

14

temporal proximity." *Cheshewalla v. Rand & Son Const. Co.*, 415 F.3d 847, 852 (8th Cir. 2005).

Second, Gossett argues other employees were treated less favorably.  At the pretext stage the Court engages in a "rigorous" comparator analysis that requires that the comparator be "involved in or accused of the same offense and are disciplined in different ways."  *E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 775–76 (8th Cir. 2003).  "To be similarly situated, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."  *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 796 (8th Cir. 2011).  Here, all but one of Gossett's proposed comparators are not level seven manages, meaning they did not "have the same supervisor" and were not "subject to the same standards."  *Barber*, 656 F.3d at 796.  *See* Filing No. 45 ¶ 71 (collecting excerpts from Gossett's deposition regarding subordinates).  The only other manager at Gossett's level was never accused of similar misconduct.  *See* Filing No. 46-1 at 30–31, Gossett Dep. 152:1–153:14 (discussing a second level seven manager who was not accused of lying during an internal investigation).  Therefore, Gossett cannot establish pretext via a comparator.

Third, Gossett argues that she was not disciplined before revealing her pregnancy.  "[E]vidence of a strong employment history will not alone create a genuine issue of fact regarding pretext and discrimination."  *King v. Guardian ad Litem Bd.*, 39 F.4th 979, 987 (8th Cir. 2022) (*quoting Main v. Ozark Health, Inc.*, 959 F.3d 319, 326 (8th Cir. 2020).  Here, the link is especially attenuated because shortly after Gossett disclosed her pregnancy, she changed managers from Bath to Wallin.  Filing No. 55-5 at 5 (identifying

the change in managers in May 2022). The inference that a decisionmaker is biased based on difference in treatment is weaker when the pre and post-pregnancy managers are different individuals.

In sum, Gossett has provided no evidence to establish that Jason's Deli's stated reason for her termination was false or that Gossett's pregnancy was the real reason. *Roberts*, 528 F.3d at 1127–28. Therefore, Jason's Deli is entitled to summary judgment on Gossett's pregnancy discrimination claim.

### B. Title VII- Pregnancy Discrimination- Failure to Accommodate

Gossett contends that Jason's Deli failed to accommodate her pregnancy by: (1) disciplining her for taking time off for pregnancy related pain, and (2) having her work a shift that was longer than ten hours.[3] Both theories fail, and Jason's Deli is entitled to summary judgement because Gossett cannot identify a comparator non-pregnant coworker or class of coworkers who were accommodated under similar circumstances.

### 1. Legal Framework

42 U.S.C. § 2000e(k) provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." Based on that language, the Supreme Court has recognized that an employer's failure to accommodate a worker's pregnancy as actionable sex discrimination under the Pregnancy Discrimination Act. *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 229

---

[3] Gossett's briefing does not address or raise issue with the other accommodations that were requested and granted by Jason's Deli. *See* Filing No. 53 at 13. Therefore, the Court will only address the two accommodations argued by Gossett in her briefing.

(2015).  However, unlike a statute like the ADA, which impose an affirmative duty to accommodate an employee's disability, failure to accommodate under the PDA is only actionable as evidence of intentional discrimination and is determined with reference to the worker's nonpregnant competitors.[4]  *Id.*

A plaintiff can rely on direct evidence of failure to accommodate (e.g., a policy that explicitly treats pregnancy differently) or through indirect evidence under a modified version of the *McDonnell Douglas* burden shifting framework.  *Young*, 575 U.S. at 229. Specifically, for her prima facie case Gossett must show: (1) she was pregnant, (2) Jason's Deli did not accommodate her pregnancy, and (3) Jason's Deli accommodated other workers "similar in their ability or inability to work.  *Id.* (quoting 42 U.S.C. § 2000e(k)). Then the burden shifts to Jason's Deli to articulate a legitimate non-discriminatory reason for not accommodating Gossett besides the fact that "it is more expensive or less convenient to add pregnant women to the category of those . . . whom the employer accommodates."  *Id.*  At that stage, the burden returns to Gossett to produce evidence that the legitimate nondiscriminatory basis for refusing her request for accommodation was pretext for sex discrimination.  *Id.*

## 2.  Prima Facie Case

---

[4] The Court's analysis and outcome on this claim may be a ticket good for one ride only.  Specifically, after the events underlying this case occurred, Congress passed the Pregnant Worker's Fairness Act ("PWFA"). Pub. L. No. 117-328, 136 Stat. 4459, Div. II, §§ 101–109 (codified at 42 U.S.C. §§ 2000gg-gg-6).  The PWFA specifically requires covered employers to "make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 2000gg-1(1).  Congress did not apply the PWFA retroactively, meaning the Court is applying the pre-FWFA law articulated in *Young*.  *See* Pub. L. No. 117-328, Div. II § 109 (setting an effective date of June 27, 2023).  The Court expresses no view on how this claim would be resolved under the PWFA and notes its analysis may not be especially helpful for a future court considering a claim under the PWFA.

Jason's Deli is entitled to summary judgment because Gossett has not identified, and the record does not reveal, a non-pregnant co-worker or class of non-pregnant coworkers who were accommodated.  "[T]he PDA's text expects comparators to exist thereby instructing PDA plaintiffs to find them and to await dismissal when they cannot." *LaBarbera v. NYU Winthrop Hosp.*, 527 F. Supp. 3d 275, 298 (E.D.N.Y. 2021) (collecting cases).  For example, in *Labarbera* the court granted summary judgment on a failure to accommodate claim related to exemption from a flu vaccination policy because plaintiff failed to provide any detail about the circumstances of coworkers who were granted an exemption that would allow the court to determine whether the coworker was similar in their ability to work.  *Id.* at 299.  Specifically, the record was silent on "the concrete particulars" of the employees who were and were not granted exemptions from the policy. *Id.* at 300.

Here, the only evidence regarding comparators is Gossett's conclusive testimony that other employees called out from work without being disciplined.  *See* Filing No. 45 at 11 ¶ 71 (collecting excerpts from Gossett's deposition).  However, neither Gossett's deposition nor any other materials in the record shed light on why the comparator employees missed work, whether they had any similar limitations on their ability to work, and whether any of the comparators were, in fact, accommodated.  *See* Filing No. 46-1 at 29–36.  Likewise, Gossett does not identify, and the record does not reveal, another employee who was permitted to leave a shift without a replacement as an accommodation for their working limitations.  *Id.*  Without a comparator, "similar in their ability or inability to work" required by 42 U.S.C. § 2000e(k), Gossett has not met the burden on her prima facie case and Jason's Deli is entitled to summary judgment.

### C.  NFEPA- Pregnancy Discrimination- Failure to Accommodate

Gossett articulates a similar theory under Nebraska law.  Jason's Deli argues the claim is subject to the same analysis as the Title VII claim.  The Court disagrees.  The text and legislative history of Neb. Rev. Stat. § 48-1107.02, indicate that the Nebraska Legislature intended for the NFEPA to apply more broadly than Title VII.  Applying the test from *Young*, would effectively nullify the policy choice made by the Nebraska Legislature.  However, even applying the broader state law standard, the Court concludes Jason's Deli is entitled to summary judgment.

### 1.  Legal Framework

Gossett's substantive claim arises under Neb. Rev. Stat. § 48-1107.02 which defines pregnancy discrimination to include "[n]ot making reasonable accommodations to the known physical limitations of an individual who is pregnant, . . . and who is an . . . employee unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the covered entity."  No Nebraska Court has addressed the standard for a failure to accommodate claim under § 48-1107.02.

Jason's Deli argues the Court should apply the federal law test described in *Young*.  *See supra* Section B.1.  The Court declines to do based on the text, structure, and context of Neb. Rev. Stat. § 48-1107.02(2)(d).

First, the text of the two statutes is materially different.  When interpreting statutes, the Court should not "read[] meaning into a statute that is not there."  *State v. Lovvorn*, 932 N.W.2d 64, 68 (Neb. 2019).  The basis for the failure to accommodate claim recognized in *Young* was 42 U.S.C. § 2000e(k)'s textural requirement that pregnant

19

employees be treated "treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 575 U.S. at 229. In contrast, Neb. Rev. Stat. § 48-1107.02(2)(d) requires an employer to "mak[e] reasonable accommodations to the known physical limitations of an individual who is pregnant." There is no text in § 48-1107.02(2)(d), implying a failure to accommodate is only actionable if the pregnant employee is not "treated the same" as nonpregnant employees. Rather, the focus is on the act of accommodating the pregnant employees known physical limitations. Applying a test aimed at ferreting out intentional discrimination would read in a requirement that the Nebraska Legislature did not adopt.

Textural parallels between § 48-1107.02(2)(d) and other provisions of Nebraska and Federal law suggest that the Nebraska Legislature intended for claims under the statute to be analyzed similarly to disability failure to accommodate claims. When two statutory provisions use the same language, they are presumed have the same meaning. *In re Est. of Psota*, 900 N.W.2d 790, 794–95 (Neb. 2017). The text of § 48-1107.02(2)(d) consciously parallels the language of the Federal ADA and Nebraska's state ADA equivalent. *Compare* Neb. Rev. Stat. § 48-1107.02(2)(d) *with* Neb. Rev. Stat. § 48-1107.02(1)(e) ("Not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless . . . the accommodation would impose an undue hardship on the operation of the business of the covered entity.") *and* 42 U.S.C. § 12112(b)(5)(A) (same under the federal ADA). Further supporting this reading, the prohibition on pregnancy discrimination is codified in the same section of the Nebraska Code as disability discrimination and separate from the section of the Nebraska code addressing the general rule against intentional

discrimination.  *See* Neb. Rev. Stat. § 48-1104(1) (codifying the general prohibition against intentional discrimination); Neb. Rev. Stat. § 48-1107.02 (setting separate requirements for pregnancy and disability).  By using the same text as statutes that provide for failure to accommodate liability and codifying pregnancy discrimination alongside disability discrimination, the Nebraska Legislature expressed an intent to analyze pregnancy discrimination claims in a similar manner to disability claims.

Statutory context and legislative history confirm what the text and structure tell us. Prior to 2015, Nebraska's protections for pregnant workers largely mirrored the Pregnancy Discrimination Act and provided "[w]omen affected by childbirth or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work."  Neb. Rev. Stat. § 48-1111(2) (2014).  In 2015, the Nebraska Legislature adopted LB 627, which applied the protections for workers with disabilities to pregnant workers.  LB 627, 104 Leg. (Neb. 2015).  The statement of intent accompanying the bill indicated that the bill amended NFEPA to "clarify and solidify workplace protections for pregnant workers" and "provide discrimination protections for pregnant workers similar to those already provided to workers for disabilities."  Introducer's Statement of Intent, LB 627, 104 Leg. (Neb. 2015).  During floor debates, the bill's proponents argued the approach taken under federal law and existing state law was inadequate, and specifically identified limits imposed by the federal courts analyzing the PDA.  *See* Floor Debate March 30, 2015, at 7, LB 627, 104 Leg. (Neb. 2015), (arguing that LB 627 was still required considering *Young* "because it moves Nebraska from using the confusing and complicated comparative standard used in the Pregnancy Discrimination Act to using a

reasonableness accommodation standard similar to current laws regarding workers with disabilities"). The statutory context confirms two things: (1) the Nebraska Legislature was aware of the approach taken under federal law, and (2) the legislature made the policy choice to expand protections for pregnant workers beyond what was available under the PDA and use the disability accommodation framework.

Therefore, the Court is analyzing Gossett's failure to accommodate claim in a similar manner as a reasonable accommodation claim under the ADA.[5] Adapting the approach used by the Nebraska Supreme Court to assess a failure to accommodate claim under the ADA, the Court concludes Gossett must show: (1) Gossett was pregnant, (2) Gossett was capable of performing her job with accommodation, (3) Gossett requested an accommodation, (4) Gossett's accommodation was reasonable and necessary to perform her job in light of her pregnancy, and (5) Jason's Deli failed to accommodate her pregnancy. *Doe v. Bd. of Regents of Univ. of Nebraska*, 846 N.W.2d 126, 146–48 (Neb. 2014). Once Gossett shows "a specific reasonable accommodation" Jason's Deli is "obliged to rebut the plaintiff's claim by presenting evidence that the plaintiff's requested accommodation imposes an undue hardship." *Id.* at 148.

## 2. Specific Accommodations

Gossett's core contention is two specific accommodations were not provided: (1) time off for pregnancy-related pain, and (2) shorter shifts (relating to the single Spring 2021 shift).

---

[5] The Nebraska Supreme Court has only addressed the medical exam provisions of Neb. Rev. Stat. § 48-1107.02, not the reasonable accommodation provision. *See McPherson v. City of Scottsbluff*, 931 N.W.2d 451, 459–62 (Neb. 2019); *Arens v. NEBCO, Inc.*, 870 N.W.2d 1, 22–25 (Neb. 2015). The Court concludes, given the strong textual parallels between NFEPA and the ADA, the Nebraska Supreme Court's ADA caselaw is the best data for predicting how it would address a failure to accommodate claim under NFEPA. Of course, the Nebraska Supreme Court is welcome to adopt a different approach when addressing the issue in a future case.

### a. Reprimands for missing work related to pregnancy.

Gossett frames the June 17th disciplinary action report as a failure to accommodate her pregnancy because she missed work on one of the days listed because of pregnancy related pain.  Jason's Deli argues this claim fails because no reasonable jury could find that she requested this accommodation in connection with her pregnancy.  *See* Filing No. 58 at 10.  The Court agrees.  Failure to produce evidence that the employee actually requested an accommodation is fatal to a failure to accommodate claim.  *See Doe*, 846 N.W.2d at 149 (affirming summary judgment when the plaintiff did not request accommodations through the proper channels).  Here, time off is certainly a potential reasonable accommodation for a pregnant employee.  *See* Neb. Rev. Stat. § 48-1102(11) ("Reasonable accommodation, with respect to pregnancy . . . shall include . . . modified work schedules . . ..").  However, Gossett did not testify that she requested time off or a modified work schedule as a possible accommodation for her pregnancy.  *See* Filing No. 46-1 at 12, Gossett Dep. 54:5–16 ("Q: Okay.  And, so, on Interrogatory Number 12, it asks you to identify all requests for accommodation that you made during your employment with Defendant.  And we talked about the, the hours, we talked about the sitting in the chair, and your 10 to 15-minute breaks, and not to lift anything too heavy.  A: Uh-huh.  Q: Is there anything you else that you requested as an accommodation because of your pregnancy?  A: No.").  Moreover, a jury could not rely on Gossett's May 27th text message as an informal request for accommodation because she does not mention pregnancy, connect her pain to her pregnancy or otherwise tie her calling off work to her pregnancy.  *Powley v. Rail Crew Xpress, LLC*, 25 F.4th 610, 612 (8th Cir. 2022) (noting that an employee "need not request an accommodation in writing or use the magic

words reasonable accommodation, but "must make clear that the employee wants assistance for . . . her disability"). There is no testimony from Wallin's deposition indicating he understood this text message as a request for accommodation. Filing No. 55-1 at 13, Wallin Dep. 43:15–44:2. Therefore, Jason's Deli is entitled to summary judgment on Gossett's claim related to a modified work schedule.

### b. Gossett working longer than ten hours

Likewise, Jason's Deli is entitled to summary judgment on Gossett's failure to accommodate claim based on the single long shift in spring 2021. The Court assumes a reasonable jury could: (1) conclude Gossett was able to work as a manager with proper accommodations for her pregnancy, (2) credit her assertion that she requested this accommodation from Bath and (3) conclude that shorter hours were necessary considering her pregnancy. Filing No. 46-1 at 12, Gossett Dep. 58:14–24 (Gossett's request for shortened shifts); Filing No. 55-5 at 10 (asserting miscarriage concerns associated with long shifts).

Jason's Deli argues even if a modified work schedule was a reasonable accommodation: (1) the spring 2022 shift was a one-time event for which Gossett was compensated, and (2) the circumstances were unexpected, and there was simply no other manager who could have substituted in for Gossett on the shift. Filing No. 48 at 20–21. The Court understands Jason's Deli to be making an undue hardship argument. *See* Neb. Rev. Stat. § 48-1102 (no failure to accommodate if employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the covered entity"). Jason's Deli has the burden of showing undue hardship. *See US Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002) (applying similar language in

the ADA).  Here, the record evidence indicates Gossett only worked a shift that was longer than ten hours on one occasion and was otherwise accommodated for a modified work schedule.  The only occasion in which Gossett worked longer than a ten-hour shift arose out of unforeseen circumstances outside of Jason's Deli's control.  A different manager called in sick and "there [were] no other options," meaning accommodating Gossett would have left no manager at the store.  Filing No. 55-5 at 8–9.  Jason's Deli recognized that the unforeseen circumstances were not ideal and provided paid time off to account for the extra hours worked by Gossett.  Filing No. 55-5 at 11.  Even taken in the light most favorable to Gossett, there is no basis for a reasonable jury to conclude that it was possible to accommodate Gossett without undue hardship to its business operations.  Therefore, summary judgment is appropriate.

In sum, applying the correct standard under Nebraska law, Jason's Deli is entitled to summary judgment on Gossett's failure to accommodate claim.

### D.  Title VII and NFEPA- Pregnancy Retaliation

Gossett's summary judgment briefing appears to address an unpled claim of pregnancy retaliation.  While this is a procedurally improper way to raise a claim,[6] as a matter of discretion, the Court chooses to address retaliation on the merits rather than procedure because Jason's Deli addressed the issue in their opening brief and is entitled to summary judgment.

---

[6] See Wendt v. Iowa, 971 F.3d 816, 821 (8th Cir. 2020) ("The pleading requirements under the Federal Rules of Civil Procedure, while 'relatively permissive,' 'do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment.'") (quoting Singleton v. Arkansas Hous. Authorities Prop. & Cas. Self-Insured Fund, Inc., 934 F.3d 830, 837 (8th Cir. 2019).

### 1. Legal Framework

Title VII and NFEPA prohibit retaliation for engaging in protected activity under the statutes. 42 U.S.C. § 12203(a); Neb. Rev. Stat. § 48-1114(1). NFEPA retaliation claims are analyzed under the same standard as Title VII retaliation claims. *See Knapp v. Ruser*, 901 N.W.2d 31, 48 (Neb. 2017). Absent direct evidence of retaliation, Gossett can use the *McDonnell Douglas* burden shifting framework to show retaliation.[7] To make her prima facie case, Gossett must show "(1) [she] engaged in statutorily protected activity; (2) [she] suffered an adverse employment action; and (3) a causal connection between the two." *Anderson v. KAR Glob.*, 78 F.4th 1031, 1036 (8th Cir. 2023). If Gossett makes her prima facie case, the burden shifts to Jason's Deli to articulate a legitimate non-discriminatory reason for the adverse action, and back to Gossett to show the proffered reason was pretextual and retaliation was the true motivation. *Id.*

### 2. Protected Activity

Here, Gossett's primary theory is that the June 17th disciplinary action report and her termination were retaliation for seeking time off on May 28th as an accommodation for her pregnancy.[8] Filing No. 53 at 5–7. Jason's Deli is entitled to summary judgment because, assuming Gossett can meet the other elements of her prima facie case, no reasonable jury could conclude Gossett engaged in protected activity. The Court

---

[7] The Court concludes Gossett has not shown direct evidence of retaliation based on the reasoning outlined *supra* Section A.2. Specifically, the disciplinary action report does not mention pregnancy, the May 27th text did not identify Gossett's pain as pregnancy-related, Gossett had not previously sought time off accommodations for her pregnancy, and the text was not framed as a request for an accommodation.

[8] Gossett's brief does not appear to argue a retaliation claim based on Gossett's other requests for accommodation. Nor does Gossett argue she opposed any lawful practices or filed a complaint internally or externally about her treatment prior to her discharge. Therefore, the Court is addressing her theory as briefed.

assumes that requesting an accommodation for one's pregnancy is protected activity. *See Anderson*, 78 F.4th at 1036 (concluding it is in the context of the ADA).[9]  However, an employee must actually request the accommodation to engage in statutorily protected activity. *Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 908 (8th Cir. 2010).  For example, in *Kirkeberg* the plaintiff, who had previously received accommodations for his disability, requested to work from home after his home was broken into. *Id.*  The court concluded that no reasonable jury could conclude the work from home request was a protected request for accommodation when the request did not reference his disability or connect his work from home request to his disability. *Id.*  Here, as discussed above, Gossett did not request time off as a general accommodation and her May 27th text message did not constitute a request for reasonable accommodation.  *See supra* Section C.2.a. Therefore, taking leave on May 28th was not a protected activity.

Alternatively, Gossett argues her review of company policies related to pregnancy-related leave was a protected activity.  This theory fails because it never ripened into a request for accommodation.  Requesting a reasonable accommodation is a protected activity because the "'right to request an accommodation in good faith is no less a guarantee under the ADA than the right to file a complaint with the EEOC,' and that 'it would seem anomalous . . . to think Congress intended no retaliation protection for employees who request a reasonable accommodation unless they also file a formal charge.'" *Kirkeberg*, 619 F.3d at 907–08.  Here, at best, Gossett's evidence demonstrates

---

[9] This assumption is perhaps stronger for Gossett's claim under NFEPA (which provides a right to a reasonable accommodation) than Title VII (which indirectly provides for reasonable accommodations).  *See Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*, 908 F.3d 1098, 1102–03 (8th Cir. 2018) (concluding, under Title VII, that a request for a religious accommodation, standing alone, was not protected activity).  Because, even applying the standard developed in the ADA context, Jason's Deli is entitled to summary judgment, the Court does not reach whether a request for a reasonable accommodation under *Young* is a protected activity.

that she was considering requesting leave related to pregnancy, but it does not show that she actually requested such an accommodation. The inchoate act of reviewing leave policies did not trigger a potential duty to accommodate on the part of Jason's Deli and, therefore, is not a protected activity.

In sum, even viewing the evidence in the light most favorable to Gossett, she cannot show she engaged in protected activity or meet her prima facie case. Therefore, Jason's Deli is entitled to summary judgment.

### E. NFEPA- Wage Discussion Retaliation

Jason's Deli is entitled to summary judgement on Gossett's wage discussion retaliation claim because the undisputed facts show activities that are not protected under the statute, namely a manager's disclosure of one subordinate's wages to a different subordinate.

#### 1. Legal Framework

Neb. Rev. Stat. § 48-1114(1) prohibits retaliation by an employer against an employee for engaging in statutorily protected activities. As relevant here, it is unlawful "for an employer to discriminate against any of his or her employees . . . because he or she . . . has inquired about, discussed, or disclosed information regarding employee wages, benefits, or other compensation." Id. § 48-1114(1)(d). The statute does not apply to "instances in which an employee who has authorized access to the information regarding wages, benefits, or other compensation of other employees as a part of such employee's job functions discloses such information to a person who does not otherwise have authorized access to such information." Id. However, such activity is protected if

"such disclosure is in response to a charge or complaint or in furtherance of an investigation, proceeding, hearing, or other action, including an investigation conducted by the employer." *Id.* If an employee engages in protected discussion of wages, benefits, or compensation the analysis proceeds under the process described *supra* Section D.1. The scope of § 48-1114(1)(d) is an issue of first impression.

### 2. Coverage under Neb. Rev. Stat. § 48-1114(1)(d)

Gossett's wage discussion retaliation claim fails because her conduct was not protected under the statute. An "employee who has authorized access" to information about employee wages is not protected if they "disclose[] such information to a person who does not have authorized access." Neb. Rev. Stat. § 48-1114(1)(d). Gossett, as a manager, had access to wage information about her subordinates. She disclosed wage information with Daniel, a delivery driver who did not have access to information about the wages of his coworkers. Filing No. 46-1 at 20, Gossett Dep. 112:11–15. Gossett did not discuss her own wages with Daniel. Rather she confirmed with Daniel the wages of her other subordinates. Filing No. 46-1 at 20. The subordinates did not permit Gossett to share their wage information and submitted a complaint to human resources. Filing No. 47-4. Therefore, Gossett was an "employee with authorized access" who "disclosed such information to a person who d[id] not have authorized access" and her conduct is not protected by Neb. Rev. Stat. § 48-1114(1)(d).

Resisting this conclusion, Gossett argues she falls within the scope of the "exception to the exception" for disclosure of wage information in the context of a "response to a charge or complaint or in furtherance of an investigation, proceeding, hearing, or other action, including an investigation by the employer." Filing No. 53 at 14

(referencing Neb. Rev. Stat. § 48-1114(1)(d)).  Gossett argues because Daniel came to her with an informal complaint about his own wages and concerns about the wages of other employees, she engaged in protected conduct when she disclosed wage information.  Gossett's reading stretches beyond what the statute can bear.

The text of Neb. Rev. Stat. § 48-1114(1)(d) forecloses Gossett's preferred reading.  The term complaint should be read alongside charge, investigation, proceeding, hearing, or other action because "words grouped in a list within a statute should be given related meaning."  *State v. Jedlicka*, 938 N.W.2d 854, 861 (Neb. 2020).  All the other terms in the list apply to formal proceedings and to interpret complaint to include an informal conversation with a subordinate would expand the exception to encompass a type of informal interaction that is different in kind from the formal proceedings in the rest of the list.  Indeed, elsewhere the NFEPA uses the word "complaint" to refer to a complaint before the Nebraska Equal Opportunity Commission, suggesting complaint is used to encompass proceedings before the commission.  *See e.g.*, Neb. Rev. Stat. § 48-1117(6) (requiring the commission to issue annual reports on the number of "complaints" to the agency); *id.* at § 48-1118(3) (noting failure to cooperate with the commission will "result in the dismissal of the complaint); *id.* at § 48-1120.01 (setting a ninety-day deadline to file in district court after the commission acts on "the complaint").  Under this reading, if Gossett disclosed the wage information of her subordinates in the context of an unequal pay claim in front of the commission, that conduct falls within the scope of the exception to the exception.  However, her actual conduct, disclosing subordinate wage information in an informal conversation with a subordinate, does not.

Statutory context and legislative history confirm that Gossett's conduct does not fall within the exception to the exception.  The purpose of this section was to allow employees to discuss their own wages without fear of retaliation, not to open the floodgates to limitless disclosure of employee wage information.  *See* Introduction Statement, L.B. 217, 106 Leg. (Neb. 2019) ("LB217 provides that an employer shall not discharge or in any other manner retaliate against any employee because such employee inquired about, discussed, or disclosed comparative compensation information for the purpose of determining whether the employer is compensating any employee in a manner that provides equal pay for equal work."); Neb. Rev. Stat. § 48-1114(2) (limiting disclosure of wage information under enumerated circumstances).  In committee, in response to concerns about the scope of the protected activity, Senator Brooks, the bill's sponsor indicated the purpose of the exception was to ensure "if you're in charge of all of the employee's data and . . . what everyone is making you don't just get to disseminate that to everyone."  Hearing Before Business and Labor Committee February 11, 2019, at 41, LB 217, 106 Leg. (Neb. 2019).  In response to these concerns, the bill was amended to confirm that the statute does not "[c]reate an obligation for an employer or employee to disclose formation regarding employee wages."  *Compare* L.B. 217, 106 Leg. (Neb. 2019) *with* Neb. Rev. Stat. § 48-1114(2)(a).  The bill sponsor explained these changes indicating "[t]his does not give an employee the right to ask about other employees' salaries.  The bill is designed to provide protections for those employees who choose to discuss wages amongst themselves."  Floor Debate March 14, 2019, at 47, LB 217, 106 Leg. (Neb. 2019); *see also id.* at 51 ("so the accountant for the company can't just release all the information about how someone is doing.").  This legislative history shows the Nebraska

legislature was aware of and rejected Gossett's position and confirms what is clear from the text: Gossett's conduct falls within the scope of the statutory exception.

Because Gossett's conduct is not protected, Jason's Deli is entitled to summary judgment on Gossett's wage discussion retaliation claim.

THEREFORE, for reasons stated above, IT IS ORDERED:

1.  Jason's Deli's Motion for Summary Judgment (Filing No. 44) is granted.


Dated this 26th day of November, 2024.

BY THE COURT:

s/ Joseph F. Bataillon_____
Senior United States District Judge